UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23530-CIV-MARRA

IN RE:

JENNY DUCRET,

    Debtor.
_____/

NANCY HERKERT,
STANDING CHAPTER 13 TRUSTEE,

    Appellant,

v.

JENNY DUCRET,

    Appellee.
_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court on the appeal by Appellant Nancy Herkert, Standing Chapter 13 Trustee ("Appellant/Trustee") of the Order Overruling Objection to Confirmation ("Underlying Order") and the accompanying opinion of the bankruptcy court, entered on July 5, 2011. The Court has carefully considered the briefs of Appellant and Appellee Jenny Ducret ("Appellee/Debtor") and is otherwise fully advised in the premises.

**I. Background**

The factual background, as articulated by the bankruptcy court below, is not in dispute:

> The Debtor, Jenny Ducret, filed a Petition on July 25, 2010. At the time of filing, the Debtor's disposable income status was above-median. At this time and until September 2010, Debtor's husband was part of the household and was contributing $8,000.00 toward household income. In September 2010, Debtor's husband left the home and now contributes only $1,800.00 per month. This

>   reduction in income reduced the Debtor's income level to below median. Debtor filed an amended plan, reducing the applicable commitment period from 60 months to 36 months. Trustee, in her Notice, objects to confirmation of the Amended plan on the basis that it does not commit the Debtor for a 60 month period.

Underlying Order at 1-2. The Bankruptcy Court also noted that, at the time the Underlying Order was rendered, "a plan [had] not yet been confirmed in this case." Underlying Order at 2.

The Bankruptcy Court overruled the Trustee's objection to the amended plan, relying on the decision of the United States Supreme Court in Hamilton v. Lanning, 130 S. Ct. 2464 (2010). Underlying Order at 2-4. The Bankruptcy Court also expressly rejected the applicability of the Eleventh Circuit's recent decision of In re Tennyson, 611 F.3d 873 (11th Cir. 2010), noting that "the court in Tennyson did not address a change in financial circumstances that caused an above-median Debtor to become below-median, as is the case here. Tennyson dealt with an above-median Debtor who had no disposable income." Underlying Order at 4 (citing Tennyson, 611 F.3d at 875).

The Trustee now appeals the Underlying Order.

## II. Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992).

## III. Discussion

"Chapter 13 of the Bankruptcy Code provides bankruptcy protection to 'individuals with regular income' whose debts fall within statutory limits." Hamilton, 130 S. Ct. at 2468 (citing 11 U.S.C. §§ 101(3), 109(e)). "Unlike debtors who file under Chapter 7 and must liquidate their

nonexempt assets in order to pay creditors, Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income." Id. at 2467-68 (citing 11 U.S.C. §§ 704(a)(1), 726, 1306(b), 1321, 1322(a)(1), 1328(a)).  The time frame during which a Chapter 13 debtor is required to make future payments to creditors under an approved plan is the "applicable commitment period."  Section 1325(b)(1) of Title 11 provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–   . . .
>
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the <u>applicable commitment period</u> beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(Emphasis supplied).

The Bankruptcy Code specifies the manner by which the "applicable commitment period" is to be determined.  Section 1325(b)(4) of Title 11 provides:

> > For purposes of this subsection, the "applicable commitment period"--
> > (A) subject to subparagraph (B), shall be –
> > > (i) 3 years; or
> > > (ii) not less than 5 years, if the <u>current monthly income</u> of the debtor
> > >  and the debtor's spouse combined, when multiplied by 12, is not
> > >  less than– [the median or highest median family income of the applicable
> > > State depending on the size of the family unit].

(Emphasis Supplied).

The Bankruptcy Code also specifies the manner by which "current monthly income" is to be determined.  Section 101(10A) of Title 11 provides:

> > The term "current monthly income"– (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the

3

> the debtor's spouse receive) . . . derived during the 6-month period ending on-- (i) **the last day of the calendar month immediately preceding the date of the commencement of the case** if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii). . . ."

(Emphasis supplied). This is referred to as the "6-month look-back period, which generally consists of the six months preceding the filing of the bankruptcy petition." Hamilton, 130 S. Ct. at 2470. Thus, the determination of whether a debtor will be required to make payments to creditors during a 5 year "applicable commitment period" is made by calculating the debtor's "current monthly income" measured from the filing date of the petition, multiplying that "current monthly income" by 12 and comparing the result with the median family income of the applicable State.

The Bankruptcy Court deviated from the statutorily mandated method for determining the "applicable commitment period" by relying upon evidence of changes in the Debtor's income after the filing of the petition, but before confirmation of the plan. The Bankruptcy Court believed that post-filing changes in the Debtor's financial circumstances could be considered in determining the "applicable commitment period" based on the decision of the United States Supreme Court in Hamilton v. Lanning, 130 S.Ct. 2464 (2010).

In, Hamilton, the Supreme Court addressed the appropriate mechanism for calculating "projected disposable income." The Court held:

> The parties differ sharply in their interpretation of § 1325's reference to "projected disposable income." Petitioner, advocating the mechanical approach, contends that "projected disposable income" means past average monthly disposable income multiplied by the number of months in a debtor's plan. Respondent, who favors the forward-looking approach, agrees that the method outlined by petitioner should be determinative in most cases, but she argues that in exceptional cases, where significant changes in a debtor's financial circumstances are known or virtually certain, a bankruptcy court has discretion to make an appropriate

adjustment. Respondent has the stronger argument.

Id. at 2471.

In holding that the mechanical approach for calculating projected disposable income conflicts with the express terms of section 1325, the Supreme Court further held:

> § 1325(b)(1) directs courts to determine projected disposable income "as of the effective date of the plan," which is the date on which the plan is confirmed and becomes binding, see § 1327(a). Had Congress intended for projected disposable income to be nothing more than a multiple of disposable income in all cases, we see no reason why Congress would not have required courts to determine that value as of the filing date of the plan. See Fed. Rule Bkrtcy. Proc. 3015(b). In the very next section of the Code, for example, Congress specified that a debtor shall commence payments "not later than 30 days after the date of the filing of the plan." § 1326(a)(1) (emphasis added). Congress' decision to require courts to measure projected disposable income "as of the effective date of the plan" is more consistent with the view that Congress expected courts to consider postfiling information about the debtor's financial circumstances. See [In re Lanning, 545 F.3d 1269, 1279 (10th Cir. 2008)] ("[D]etermining whether or not a debtor has committed all projected disposable income to repayment of the unsecured creditors 'as of the effective date of the plan' suggests consideration of the debtor's actual financial circumstances as of the effective date of the plan").

Id. at 2474. (Emphasis supplied). The Hamilton Court thus held that bankruptcy courts, in the context of calculating projected disposable income as of the effective date of the plan, may consider changes in the debtor's financial circumstances that are known or virtually certain to occur after the filing of a proposed plan, but before the plan's confirmation. Id. at 2478

In concluding that for purposes of determining "projected disposable income" a Bankruptcy Court may rely on post-filing financial information, the Supreme Court relied heavily on two factors not applicable to the determination of "applicable commitment period." First, the Court placed great emphasis on Congress' use of the term "projected" in section 1325(b)(1). The Court stated that "the word 'projected' appears in many federal statutes, yet Congress rarely has

5

used it to mean simple multiplication." Id. at 2471.  Distinguishing the term "projected disposable income" from other areas of the Bankruptcy Code, the Supreme Court further stated: "By contrast, we need look no further than the Bankruptcy Code to see that when Congress wishes to mandate simple multiplication, it does so unambiguously - most commonly by using the term multiplied." Id.  As an example of Congress mandating simple multiplication, the Supreme Court cited section 1325(b)(3), which references "currently monthly income, when multiplied by 12," the key variable component for determining the "applicable commitment period."  Section 1325(b)(4) of Title 11, which sets forth the method for determining "applicable commitment period," also provides for "simple multiplication;" namely, the "current monthly income of the debtor . . . when multiplied by 12."

Another major factor in the Supreme Court's decision that "projected disposable income" may be based upon post-filing financial information was Congress' direction that this component be determined "as of the effective date of the plan."  By way of contrast, the Court stated: "Had Congress intended for projected disposable income to be nothing more than a multiple of disposable income in all cases, we see no reason why Congress would not have required courts to determine that value as of the filing date of the plan." Id. at 2474.  Unlike "projected disposable income" which Congress directed be determined as of the effective date of the plan, Congress specifically directed that "current monthly income," the key variable component for determining the "applicable commitment period" be determined by reference to the filing date of the petition.

Shortly after the Supreme Court rendered its decision in Hamilton, the Eleventh Circuit Court of Appeals decided  In re Tennyson, 611 F.3d 873, 879 (2010).  In that case, an above median debtor with negative disposable income proposed a plan that would last only three years,

6

rather than the five years required by section 1325(b)(4). In holding that the five year requirement of section 1325(b)(4) was required despite the debtor's negative disposable income, the Eleventh Circuit expressly distinguished the Supreme Court's decision in Hamilton and provided guidance in deciding how "applicable commitment period" should be determined. The Eleventh Circuit stated:

> Lanning opens the door for the possibility that the final projected disposable income accepted by the bankruptcy court may not be the result of a strict § 1325(b)(1)(B) calculation. The "applicable commitment period" must have an existence independent of the § 1325(b)(1)(B) calculation. If "applicable commitment period" were left dependent upon projected disposable income, as Tennyson recommends, then it would necessarily be dependent on the multitude of indeterminate factors that Lanning has allowed to be used in the determination of projected disposable income. This in turn would leave "applicable commitment period" an indeterminate term. In order for "applicable commitment period" to have any definite meaning, its definition must be that of a temporal term derived from § 1325(b)(4) and independent of § 1325(b)(1).

Id. at 878-79.

The rationale used by the Court in Hamilton, and the distinction made by the Court in Tennyson between "projected disposable income" and "applicable commitment period," convinces this Court that the Bankruptcy Court erred in considering post-filing financial information of the Debtor when determining the "applicable commitment period."

The Supreme Court in Hamilton placed great weight on the qualifying word "projected" as it related to disposable income. That qualifier is not present relative to "applicable commitment period." The Court in Hamilton also emphasized the lack of simple multiplication to determine "projected disposable income," whereas simple multiplication is mandated for the determination of "current monthly income," 11 U.S.C. §101(10A), and "applicable commitment period," 11 U.S.C. 1325(b)(4). The Court in Hamilton also emphasized that "projected

disposable income" was to be determined as of the "effective date of the plan," and contrasted that mandate from those which Congress requires to be valued "as of the filing." "Current monthly income," the key variable in determining the "applicable commitment period," is mandated to be calculated as of the filing date of the petition. 11 U.S.C. §101(10A).  Lastly, the Court in Tennyson recognized that the "applicable commitment period" must have "an existence independent of the § 1325(b)(1)(B) calculation," namely, the calculation of "projected disposable income."  "Applicable commitment period" cannot "be dependent on the multitude of indeterminate factors that [Hamilton] has allowed to be used in the determination of projected disposable income. This in turn would leave "applicable commitment period" an indeterminate term." Tennyson, 611 F.3d at 878-89.  The Eleventh Circuit thus concludes that "applicable commitment period" must have "definite meaning."  Id.  If "applicable commitment period" is to have definite meaning, and is not to "be dependent on the multitude of indeterminate factors that [Hamilton] has allowed to be used in the determination of projected disposable income, a bankruptcy court cannot consider post-filing financial information of the Debtor.

## IV. Conclusion

For the aforementioned reasons, the Order Denying Motion to Dismiss is **REVERSED AND REMANDED** to the Bankruptcy Court.  This case is **CLOSED**.  All pending motions are

**DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of September, 2012.

_____
KENNETH A. MARRA
United States District Judge